## C. B. MYTON v. THURLOW.

INSTRUCTIONS, *Erroneous.*  In an action on a promissory note, given on the purchase and sale of a horse, the defendant claimed that the sale was fraudulent; that the horse was unsound and worthless, and therefore that the note was given without consideration.  Afterward, and after the defendant had become acquainted with all the facts, he gave additional security on the note, and accepted a credit of $30 on the note.  But he claims that this action of his was not a ratification or confirmation of the original contract, because it was also procured by fraud and by threats and duress.  The evidence was very conflicting upon these questions, and pretty evenly balanced.  The court charged the jury, among other things, that "if a single word be dropped by the vendor which does mislead the purchaser, the principle ['that a vendor is not bound to disclose defects when the chattel sold is equally open to inspection by the purchaser'] will not be allowed to operate," and "if the jury believe that there was fraud in the original sale, and the note sued on was obtained by fraud on the part of the plaintiff, then fraud renders the contract void, and not voidable merely, and the contract cannot be confirmed without a new consideration."  It was not claimed that any new consideration passed in this case.  The jury found a verdict in favor of the defendant and against the plaintiff, and judgment was rendered accordingly.  *Held,* That said instructions are not strictly correct, and that the jury may have been misled by them, and therefore that the judgment of the court below must be reversed, and the cause remanded for a new trial.

*Error from Reno District Court.*

ACTION brought by *Myton* against *Thurlow* on a promissory note given by the latter to the former for a horse.  Trial at the November Term, 1877, of the district court, and judgment for the defendant.  The plaintiff brings the case here. The facts sufficiently appear in the opinion.

*Houk & Whitelaw,* for plaintiff in error.

*Cox & Lewis,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.:  This was an action brought by C. B. Myton against James Thurlow on a promissory note.  The note was given by Thurlow to Myton on the purchase and

sale of a horse. It was dated August 2, 1876, due October 1, 1876, for $100, and drawing 12 per cent. per annum interest. Thurlow claims that the sale was fraudulent; that Myton sold him an unsound and worthless horse, representing and warranting it to be a good, sound and valuable one; and therefore that said promissory note was given without sufficient consideration, and therefore that he is not bound to pay the same. Upon this question of fraud the evidence was very conflicting, and pretty evenly balanced, but the jury found in favor of the defendant, which was probably right. The plaintiff not only denied said claim of fraud, but set up in reply thereto, that the defendant, after becoming acquainted with all the facts, freely and voluntarily ratified and confirmed the entire transaction, including said sale and note, by giving to the plaintiff additional security on the note, and accepting in consideration thereof a credit on the note of $30. That the defendant did give said additional security and did accept said credit, are admitted facts in the case; but the defendant says that he did these things from misapprehension and fear, caused by the fraud, threats and duress of the plaintiff and one R. B. Shadduck. The evidence was very conflicting on this question also — defendant testifying on one side, and the plaintiff and Shadduck on the other. The defendant's testimony upon the subject is as follows:

"Shadduck and Myton came to my place about nine o'clock at night; I was asleep in my barn. They called me down. Myton said he had heard the horse was dead, and that if I did not fix the matter up that he was going to arrest me for mortgaging property that was not my own; that if I would give him an additional chattel mortgage on a field of corn, that he would credit the note with $30, leaving me only $70 to pay. I was about half asleep; I did not know what kind of trouble Myton could put me to by arresting or trying to arrest me, and to save trouble and keep from being arrested, I gave the chattel mortgage on the field of corn, and he said he would credit the note with $30. The horses I mortgaged were in litigation at the time I mortgaged them. I claimed them, and thought they were rightfully mine. I signed the mortgage I gave on the horses previously without reading it,

and Myton did not read it to me. It was some weeks after the horse died that Myton and Shudduck came to my house at night, and called me out from where I was sleeping in the barn.

*Cross-examined by plaintiff's counsel.*—"I made the additional mortgage to Myton and accepted the credit of $30, as the best arrangement I could make from a business standpoint, because I did not know what trouble Myton could put me to."

The plaintiff's and Shadduck's testimony was substantially that the defendant gave said additional security freely and voluntarily, on account of a partial failure of the previous security and on account of said credit of $30; and that said credit was given because of said additional security, and because the horse for which the note had been given had died. On this question the jury found in favor of the defendant— that is, they found a general verdict in favor of the defendant, and against the plaintiff; and also, in answer to the following question, they made the following answer, to wit: "Was there a settlement between Myton and Thurlow of their differences concerning the horse, after the death of the horse, in consideration that Myton was to deduct $30 from the note?" *Answer:* "No."

It is possible that this verdict would be allowed to stand, if it did not appear that the jury were probably misled by the charge of the court. The court charged the jury, among other things, that: "If a single word be dropped by the vendor which does mislead the purchaser, the principle 'that a vendor is not bound to disclose defects when the chattel sold is equally open to inspection by the purchaser' will not be allowed to operate;" and "if the jury believe that there was fraud in the original sale, and the note sued on was obtained by fraud on the part of the plaintiff, then fraud renders the contract void, and not voidable merely, and the contract cannot be confirmed without a new consideration."

The above instructions we think are hardly correct. The first one is a little too strong. It leaves out of consideration the motives of the vendor; his good faith, or bad faith.

It also leaves out of consideration the question, whether the misleading word was the expression of an opinion merely, or the statement of a fact; and also, whether it had reference to the past, or to the present, or the future. Certainly if it was merely the *bona fide* expression of an opinion, as to something to take place in the future, the vendor should not be held responsible for it, although the vendee might have been misled by it. Suppose that the horse had injured his leg in the presence of the vendor and vendee, and the vendor had then expressed his honest opinion that the leg would be well within ten days; and the vendee had relied upon that expression of opinion, and had purchased the horse, and the leg had not got well in ten days, but from some unknown cause, had mortified, and the horse had died, would the vendor be held responsible for thus misleading the vendee? We would think not. (2 Pars. on Cont., 6 ed., p. 778.) But this instruction is not so erroneous for this case as the second one above quoted. The jury found that the plaintiff committed a fraud in the sale of the horse, and probably he did; though the question was hardly submitted fairly to the jury. But assuming that he committed a fraud in the sale of the horse, then was the entire contract absolutely void — so void that the defendant could not ratify it or confirm it, if he had so chosen, without a new consideration passing? We think it was not void to such an extent as that. It was void only at the option of the innocent party. He could consider it void, if he chose to do so; or he could consider it valid, if he chose to do so. And if he chose to consider it valid, it would be valid, without any new consideration passing; and even against the will and the wishes of the guilty party. And after the innocent party became acquainted with all the facts, he could, by agreement with the other party, make the contract valid and binding upon both the parties, so that neither of them could afterward ignore it, or repudiate it, or rescind it, except with the consent of the other, ( Bigelow on Fraud, p. 184, and cases there cited ); or they might modify the contract as they chose, ( as the plaintiff claims they did in

this case,) and the new and modified contract would be valid and binding upon both parties. The jury were led to believe in this case, that not only the same, but everything subsequently transpiring, was void; for there was no claim that any new consideration passed from the plaintiff to the defendant. Indeed, the only consideration that ever passed from the plaintiff to the defendant was said horse that afterward died. We do not wish to say that the verdict of the jury is wrong. It may be right. But we cannot say that it is necessarily right. It might, perhaps, have been different, except for said erroneous instructions. And not knowing the effect that said erroneous instructions may have had upon the jury, we shall have to order that the judgment of the court below be reversed, and the cause remanded for a new trial.

All the Justices concurring.